**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BENJAMIN MUMAW, ET AL.,** | ) | **CASE NO. 1:13CV1048** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **OHIO STATE RACING COMM. ET AL** | ) | <u>**OPINION AND ORDER**</u> |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

This matter is before the Court on Plaintiffs' Benjamin and Joshua Mumaw and Eyes

of a Child Stables Motion for Preliminary Injunction (ECF # 28).  Plaintiffs seek to enjoin

"Defendant Ohio Racing Commission from suspending or terminating Plaintiffs' licenses or

in any way interfering with or adversely effecting Plaintiffs' rights to own, train or race

horses at any of the Ohio Racetracks to which Defendant has issued a racing permit where

such action relates to or arises from the events which are the subject of Plaintiffs' Original

Complaint."  Plaintiffs' further seek to enjoin Thistledown Racetrack "from denying

Plaintiffs' stall request; from suspension of Plaintiffs' track privileges or in any way

interfering with Plaintiffs' ability to stall, train and race horses at Thistledown Racetrack or

otherwise exclude Plaintiffs'(sic) from the premises."  For the following reasons, the Court

denies Plaintiffs' Motion.

**Background Facts**

On May 8, 2013, Plaintiffs Benjamin and Joshua Mumaw and Eyes of a Child Stables filed their Complaint against Defendants Ohio State Racing Commission ("Racing Commission"), William Crawford, Richard Kinsey, Joseph McCullough, Phillip T. Gore, Jr., Caesars Entertainment Corporation and Deborah Jones.  On July 31, 2013, Plaintiffs amended their Complaint removing Caesars Entertainment Corp. and adding Thistledown Racetrack, LLC.  The Complaint alleged 42 U.S.C. §1983 claims for violating Plaintiffs' Fourth and Fourteenth Amendment Rights under the U.S. and Ohio Constitutions, Constitutional violations and abuse of power claims against the members of the Board of Stewards in their official and individual capacities; breach of contract, declaratory relief, defamation and false light claims against Thistledown; and extortion, defamation, libel and false light claims against Defendant Deborah Jones.  On June 17, 2013, Plaintiffs filed a Motion for Temporary Restraining Order against the Ohio State Racing Commission.  That Motion was denied on June 19, 2013.

Benjamin and Joshua Mumaw are a father and son thoroughbred horse training operation.  The father, Benjamin, has been training race horses since 1974 and is a partner in Plaintiff Eyes of a Child Stables.  His son, Joshua, has been training horses since 2009.  According to the Motion for Preliminary Injunction, Joshua owned a thoroughbred horse named High Success which he and Benjamin trained.  The horse was stabled and raced at Thistledown Racetrack.  In the fall of 2012, a veterinary exam revealed High Success had a leg injury that prevented it from racing.  The Mumaws gave High Success to a woman

seeking a riding horse for her children.  A few weeks later, Plaintiffs were contacted by

Defendant Deborah Jones, an animal rights activist in California, who informed them High

Success was discovered at an auction and was purchased by a third party to prevent High

Success's sale for slaughter.  Jones demanded money to help support High Success and

reported the sale to Thistledown officials and Racing Stewards.  The Racing Stewards then

scratched Mumaw horses from all races and prohibited Plaintiffs from entering any other

horses owned or trained by them from any further races in 2012.  Thistledown Racetrack

suspended certain  track privileges of the Mumaws, including their ability to participate in

any races.  These actions were based on Thistledown's Boarding Agreement, which

prohibited the transportation from the Racetrack of any horse for the purpose of slaughter.

Plaintiffs were subsequently ordered to appear before the Ohio State Racing

Commission and its Board of Stewards on June 20, 2013, to answer charges brought against

them by the Board of Stewards.  The June 20, 2013 hearing intended to address the allegation

that Joshua Mumaw engaged another trainer to register a horse in a race and identify the other

trainer as the trainer of the Mumaw trained horse in order to evade the prohibition against the

Mumaw's entering horses in races while under suspension.  The charges would have the

effect of suspending Joshua's license to train thoroughbred race horses.

At the June 19, 2013 telephone conference, Plaintiffs' and Defendants' counsel agreed

that the June 20, 2013 hearing had been cancelled.  Furthermore, Defendant Ohio State

Racing Commission's counsel represented that her client has suspended its investigation of

Joshua and had no present intention of pursuing sanctions against him.   Based on that

information, the Court denied Plaintiffs' Motion for TRO.  Plaintiffs now move for

Preliminary Injunction to ensure they will be able to race horses at Thistledown in the upcoming season.

According to Plaintiffs' Motion, Ohio Revised Code Section 3769 vests the Ohio State Racing Commission with authority to issue permits and licenses to horse racing participants, to promulgate rules and conditions for horse racing and to mete out sanctions for violations of the rules.  Thus, state law confers upon the Racing Commission the right to determine who may or may not engage in horse racing in the State of Ohio.  Thistledown's exclusion of Plaintiffs usurps the Racing Commission's authority and warrants the injunction sought by Plaintiffs.  Furthermore, the Racing Commission denied Plaintiffs their rights without a hearing thus, denying Plaintiffs their due process rights.

Defendant Ohio State Racing Commission opposes Plaintiffs' Motion because it contends there is no imminent threat of harm to Plaintiffs.  In fact, Plaintiffs have their licenses and are able to train and own race horses presently in Ohio.  Although there are administrative actions pending, those have been stayed pending this litigation.   Defendant further contends the administrative process comports with due process in that it allows cross examination of witnesses, the right to present evidence and object to evidence.  It permits objections to any administrative decision and allows for appeal to Franklin County Court of Common Pleas and further appellate review.   Therefore, there is nothing to enjoin.

Furthermore, the Racing Commission contends an injunction against the Commission would deprive it of its statutory obligation to protect the public by regulating horse racing in Ohio.  Any injunction would jeopardize the Commission's regulatory function.

Lastly, no injury to the public interest has occurred since the parties have already

4

agreed to preserve the status quo by staying the pending administrative action.

Thistledown argues Plaintiffs told differing versions of the sale of High Success, causing Thistledown to determine they were not credible.  Thistledown banned Plaintiffs from racing in 2012 and no decision was made on Plaintiffs' 2013 application.  Thistledown contends that under clear Ohio law, Thistledown has the common law right to exclude persons from its property.  While Plaintiffs acknowledge Ohio Supreme Court precedence, they ask the Court to ignore it in favor of a West Virginia Supreme Court decision that has no relationship to Ohio law.  Furthermore, Ohio Administrative Law further authorizes Thistledown to exclude Plaintiffs.

## LAW AND ANALYSIS

Injunctive relief is an extraordinary remedy and is issued cautiously and sparingly. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312-313 (1982).

Four factors must be considered when deciding whether to grant an injunction: (1) whether the movant has a strong likelihood of success on the merits; (2) whether there is a threat of irreparable harm to the movant; (3) whether others will suffer substantial harm as a result of the injunction, should it issue; and (4) whether the public interest will be served by the injunction.  *See Rock & Roll Hall of Fame and Museum, Inc. v. Gentile Prods*., 134 F. 3d 749, 753 (6th Cir. 1998); *Vittitow v. Upper Arlington*, 43 F. 3d 1100, 1109 (6th Cir. 1995) (the four factors are "not prerequisites to be met, but factors to be balanced."); *D.B. v. Lafon*, 2007 U.S. App. LEXIS 3886 (6th Cir. 2007).  While no single factor will be determinative as to the appropriateness of the equitable relief sought, (*In re DeLorean Motor Co.*, 755 F. 2d 1223, 1229 (6th Cir. 1985)), "a finding that there is simply no likelihood of success on the

5

merits is usually fatal."  *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F. 3d 620, 625 (6th Cir. 2000).

The moving party must establish its case by clear and convincing evidence.  *See Deck v. City of Toledo*, 29 F. Supp. 2d 431, 433 (N.D. Ohio 1998), *citing Garlock, Inc., v. United Seal, Inc*., 404 F. 2d 256, 257 (6th Cir. 1968).

Having considered Plaintiffs' Motion for Preliminary Injunction in light of the above four factored test, the Court denies the Motion.

**<u>Ohio State Racing Commission</u>**

When considering Plaintiffs' Motion for Preliminary Injunction against the Racing Commission, the Court finds Plaintiff has not shown, by clear and convincing evidence, a strong likelihood of success on the merits nor shown a threat of irreparable harm.  The United States Supreme Court has held injunctive relief " is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again—a "likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons* 461 U.S. 95, 111,  (1983).   Of primary consideration is the single fact that Plaintiffs are presently licensed by the State of Ohio to own, train and race horses.   The Racing Commission has neither suspended nor revoked Plaintiffs' licenses.  In fact, the Racing Commission granted Plaintiffs' licenses after the filing of this suit and after Plaintiffs were denied a Temporary Restraining Order.  This militates against a finding that Plaintiffs are likely to suffer substantial and immediate irreparable injury.

Further militating in favor of denying the extraordinary relief of an injunction is the

6

Court and parties can only speculate on the result of any further proceedings against Plaintiffs by the Racing Commission.   Plaintiffs bear the burden of demonstrating, by clear and convincing evidence, " 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.,* 443 F.3d 540, 552 (6th Cir.2006).   Asking the Court to enjoin Defendants from possibly ruling against Plaintiffs requires that the Court speculate on the conclusions to be made by the Racing Commission at a potential hearing at some undetermined later date.   Clearly, this speculative, possible future harm does not rise to the level of actual and imminent harm to warrant injunctive relief.

The Racing Commission has further outlined the process available to Plaintiffs should a hearing be held on Plaintiffs' alleged wrongdoing.  That process, as described by the Racing Commission and codified in Ohio Revised Code Section 3769 *et seq.*, and corresponding regulations, provides sufficient due process to ensure a full and fair hearing to Plaintiffs.  This includes the right to have an attorney present and confront witnesses, the ability to appeal an adverse decision to the Commission and then to state court.  Furthermore, any appeal of an adverse decision by the stewards stays any suspension until further action by the Commission. The fact that any potential adverse ruling by Defendant against Plaintiffs would be stayed pending appeal further militates against issuing an injunction.

Therefore, the Court finds Plaintiffs have failed to meet their burden to show by clear and convincing evidence a "likelihood of substantial and immediate irreparable injury" and the Court denies Plaintiffs' Motion for Preliminary Injunction against the Ohio Racing Commission.

**Thistledown Racetrack**

7

Plaintiffs contend Thistledown lacks the authority to exclude from its premises licensees because Thistledown is a permit holder under Ohio law.  By subjecting itself to the obligations of a permit holder, it has conceded its right to exclude to the Racing Commission because ORC § 3769 confers such powers upon the Racing Commission.   ORC § 3769 reads in pertinent part:

> The state racing commission may issue, deny, suspend, or revoke licenses to those persons engaged in racing and to those employees of permit holders as is in the public interest for the purpose of maintaining a proper control over horse-racing meetings. The commission, as is in the public interest for the purpose of maintaining proper control over horse-racing meetings, also may rule any person off a permit holder's premises.

The Court finds Plaintiffs cannot meet their burden to show a "strong likelihood of success on merits" against Thistledown Racetrack.  Though Plaintiffs urge the Court to discount the Ohio Supreme Court's decision in *Bresnik v. Beulah Park Ltd Partnership*, 67 Ohio St. 3d 302 (1993), the Court is bound to apply the Ohio Supreme Court's ruling on the rights of private property owners to exclude.  "It is axiomatic that state courts are the final authority on state law." *Hutchison v. Marshall,* 744 F.2d 44, 46 (6th Cir.1984).

In *Bresnik,* a state licensed agent for jockeys was excluded from a private racetrack by Defendant Racetrack owners.  The agent filed a complaint in state court, contending that ORC § 3769 and accompanying regulations abolished the racetrack owner's common law right to exclude from its premises whomever they please.  The state court ruled in favor of the racetrack owners and the agent appealed.  The appellate court reversed in favor of the agent and the case went to the Ohio Supreme Court.  In reversing the appellate court, the Ohio Supreme Court held that ORC § 3769 did not abolish a racetrack owner's common law right

8

to exclude.  The Ohio Supreme Court considered the same argument made by Plaintiffs in this

case -i.e. that racetracks are so heavily regulated by the state that only the Racing

Commission has the authority to exclude, not the private racetrack owner: and ORC § 3769,

which confirms upon the Racing Commission the authority to exclude, abrogates any

common law rights.  In concluding that the common law right to exclude was not abrogated

by regulation, the Ohio Supreme Court held:

> Contrary to appellee's assertion, R.C. Chapter 3769 and its accompanying
> regulations do not abolish the common-law right of proprietors to exclude
> individuals from their property. Not every statute is to be read as an abrogation
> of the common law. "Statutes are to be read and construed in the light of and
> with reference to the rules and principles of the common law in force at the
> time of their enactment, and in giving construction to a statute the legislature
> will not be presumed or held, to have intended a repeal of the settled rules of
> the common law *unless the language employed by it clearly expresses or
> imports such intention.*" (Emphasis added.) *State v. Sullivan* (1909), 81 Ohio
> St. 79, 90 N.E. 146, paragraph three of the syllabus.

> The rules and statute cited by the appellee provide a right to exclude to the
> racing commission and racing stewards, who are not addressed by the common
> law. This does not mean that racetrack owners who possessed this right at
> common law have lost that right due to rules and statutes providing the same
> right to others. R.C. Chapter 3769 and its accompanying regulations
> supplement the common law by providing the racing commission and stewards
> with a right to exclude jockey agents from a racetrack in addition to the right to
> exclude held by the proprietors of the track.

Plaintiffs ask the Court to adopt the reasoning of the dissent in *Bresnik,* which argued

that the common law power to exclude has been altered by the Ohio regulatory scheme and,

by applying for a permit to conduct horseracing, racetrack owners surrendered a portion of

their power to exclude to the state.  However, the Court is bound to apply the majority ruling

of the Ohio Supreme Court as stated above.  Therefore, the Court holds Plaintiffs cannot show

a strong likelihood of success on the merits of their claim against Thistledown.  Because the

9

Ohio Supreme Court as final arbiter of Ohio law has held Thistledown has the common law right to exclude Plaintiffs from their property, the Court denies Plaintiffs' Motion for Preliminary Injunction against Thistledown.

Therefore, for the foregoing reasons, the Court denies Plaintiffs' Motion for Preliminary Injunction in its entirety.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  February 21, 2014