UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BENJAMIN MUMAW, ET AL., | ) | CASE NO.1:13CV1048 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| THISTLEDOWN RACETRACK, LLC ET AL., | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Richard Garrison's Motion for Judgment on the Pleadings (ECF # 60). For the following reasons, the Court grants Defendant's Motion for Judgment on the Pleadings and dismisses all Plaintiffs' claims against Defendant.

**Background Facts**

Plaintiffs, Benjamin Mumaw and Joshua Mumaw, are Ohio residents and members of a father/son operation that breeds and trains racehorses and Plaintiff, Eyes of a Child Stables, is a racing consortium and registered partnership in the State of Ohio. In this action, they seek monetary damages and injunctive relief against the Commission and the other named Defendants.

The Commission is a statutorily created Ohio agency "charged with the regulation, supervision and rule enforcement for Thoroughbred and Standardbred horse racing in the State of Ohio," and Crawford is the Executive Director of the Commission.  The Commission vests its authority regarding horse racing, participants, personnel and activities involved in horse racing in a Board of Stewards.  On November 8, 2012, the Board of Stewards at Thistledown Racetrack, under the Commission's authority, withdrew Plaintiffs' horse, *Officer Moo La Moo*, from a race.  Plaintiffs' horse was withdrawn following Defendant Jones's communication alleging that Plaintiffs had a horse at Sugar Creek Livestock Auction, which is known to occasionally sell horses to slaughterhouses.  The Board of Stewards also suspended Plaintiffs' track privileges for the balance of 2012 and, after a later hearing, permanently barred them from entry.  Plaintiffs' Second Amended Complaint alleges a second Board of Stewards, which included Garrison, brought charges against Plaintiffs, held a hearing and issued sanctions against Plaintiffs in May-June 2013.

Although selling and purchasing horses at auction for the purpose of slaughter violates no state or federal laws, the Thistledown Boarding Agreement prohibits parties from selling race horses for slaughter or at an auction house that sells horses for slaughter.  Plaintiff Joshua Mumaw was the recorded owner of the former race horse, *High Success*, when it was sold at Sugar Creek Livestock Auction.   Plaintiffs claim, however, that the horse had been given to "a woman," and deny any part in or knowledge of the horse being at auction.

On February 26, 2014, Plaintiffs filed their Second Amended Complaint, alleging claims against Garrison for violation of Plaintiffs' due process rights and for abuse of power.  On August 11, 2014, Defendant Richard Garrison filed his Motion for Judgment on the

Pleadings.

**Garrison's Motion**

Garrison moves to dismiss Plaintiffs' claims against him under a number of theories. First, Garrison argues Plaintiffs' Second Amended Complaint fails to allege facts sufficient to state plausible claims for due process and abuse of power violations. Under binding United States Supreme Court precedent Plaintiffs' Second Amended Complaint must state more than conclusory allegations of wrongdoing but, instead, must allege facts sufficient to make these claims plausible. Because Plaintiffs' Second Amended Complaint only states conclusory allegations of wrongdoing, it fails as a matter of law.

Second, Garrison contends Plaintiffs cannot demonstrate a due process violation because the Hearing held before the Board of Stewards did not deprive Plaintiffs of any rights. The Board of Stewards' decision was immediately appealable and any sanction issued by the Board was automatically stayed until an appeal was heard. Therefore, Garrison claims, Plaintiffs cannot plausibly assert any due process violation. Furthermore, Garrison argues he is immune for any individual liability because he did not knowingly participate in conduct that violated Plaintiffs' constitutional rights. Lastly, Garrison argues he is immune from monetary damages arising from any act conducted in his official capacity under the Eleventh Amendment to the United States Constitution.

**LAW AND ANALYSIS**

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed. R. C.iv. P. 12(c). In this jurisdiction, "[t]he standard of review for a judgment on the pleadings is the same as that for a motion to dismiss

3

under Federal Rule of Civil Procedure 12(b)(6) . . . . We 'construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief.'" *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 389 (6th Cir. 2007) (citations omitted).  The Court's decision "rests primarily upon the allegations of the complaint"; however, "'exhibits attached to the complaint[] also may be taken into account.'" *Barany-Snyder v Weiner,* 539 F.3d 327, 332 (6th Cir. 2008) (citation omitted) (brackets in the original).  Lastly, a Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

**Due Process Violations**

According to Plaintiffs' Second Amended Complaint, Garrison was a Steward with Ohio State Racing Commission ("OSRC").  The OSRC is charged with regulating, supervising and enforcing rules relating to Thoroughbred and Standardbred horse racing in the State of Ohio.  Furthermore, it issues licences and permits for race participants and venues.  On May 9, 2013, Garrison, along with two other Stewards, convened a hearing at Thistledown Racetrack wherein Plaintiffs were called to defend certain charges brought by the Stewards.  Plaintiffs objected to the hearing but the Stewards proceeded over the objections.  According to Plaintiffs, at the hearing the Stewards took testimony they knew to be false, challenged and intimidated Plaintiffs' witnesses and reshaped testimony to fit the Stewards' own predetermined outcome.  In a June 14, 2013 ruling,  the Stewards issued sanctions against Plaintiffs for violations that Plaintiffs contend were contrary to the evidence

presented.

Before the Court may determine whether Plaintiffs' constitutional rights were violated, it must first consider the process involved. Here, the Stewards' actions were conducted according to O. R.C. § 3769.091, which reads:

> The state racing commission may delegate to the stewards and judges of racing meetings under the jurisdiction of the commission the power to suspend licenses for not to exceed one year and to impose fines not to exceed one thousand dollars for any violation of the rules or orders of the commission, provided that two of such officials shall concur in such suspension. Any suspension of a license by such officials is valid even though the suspension extends beyond the period of the racing meeting for which such officials have been appointed. The suspension shall be effective at all other race meetings under the jurisdiction of the commission. Any fine or suspension may be appealed to the commission. Such appeal shall stay the fine or suspension until further action by the commission.

Plaintiffs' Second Amended Complaint alleges at paragraphs 48-51 and 76-78:

> 48. On May 9, 2014, Daryl Parker, Joseph DeLuca and Richard Garrison, Collectively Board of Stewards II, convened a Hearing at Thistledown Racetrack wherein Plaintiffs were each called to defend against certain charges prosecuted by the Stewards that each knew or should have known to be false and of a purely retaliatory nature; [1]
>
> 49. The Board of Stewards II went forward with the "Hearing" over the legitimate objections of Plaintiffs' counsel and with Plaintiffs in abstentia;
>
> 50. The Board of Stewards II took testimony they knew to be false and contrary to the facts of their inquiry; challenged and intimated (sic) the Commission's own witnesses when they disagreed with the testimony; and consistently restated the testimony to comply with the outcome which they always intended even over the occasional objections and corrections of those giving testimony; and
>
> 51. In a ruling dated June 14, 2013, the Board of Stewards II found against

---

[1] Although Plaintiffs' Second Amended Complaint alleges the hearing occurred on May 9, 2014, Plaintiffs' Brief in Opposition states the hearing was held on May 9, 2013.

5

Plaintiffs contrary to the facts and evidence presented and issued sanctions against Plaintiffs based upon that ruling.

76. The Board of Stewards II collectively and each in their individual capacities and under color of law did conduct a Hearing wherein they purposefully and with intent to injure the Plaintiffs proceeded despite a known conflict of interest over the objections of Plaintiffs' counsel; they manipulated the testimony; and they and each caused false evidence to be admitted into the record;

77. The Board of Stewards II collectively and each in their individual capacities and under color of law deprived Plaintiffs of due process of law;

78. The Board of Stewards II collectively and each in their individual capacities and under color of law issues (sic) a Ruling that they and each knew to be contrary to the facts;

The Second Amended Complaint fails to allege the nature of the charges brought, the substance of the testimony presented, what witnesses were heard, what charges were false and what sanctions were issued. Plaintiffs offer no factual allegations concerning these matters. Plaintiffs' allegations that "certain charges" were brought and as a result "issued sanctions against Plaintiffs" does not permit the Defendant nor the Court from ascertaining what injury if any Plaintiffs suffered, what deprivation Plaintiffs experienced, what charges were brought and what process was offered. Garrison argues the lack of facts supporting Plaintiffs' due process claim in Plaintiffs' Second Amended Complaint leads to Plaintiffs failure to state a claim as a matter of law.

## LAW AND ANALYSIS

To state a claim, the Court applies the following standard:

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S.

6

> Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555... A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth*, 499 F.3d at 542. A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court is not required to accept as true legal conclusions.

Plaintiffs' Second Amended Complaint alleges that, in a prior ruling from a different Board of Stewards in which Garrison did not participate, Plaintiffs' were permanently barred from racing at Thistledown. (See SAC at 40). There he alleges a particular deprivation.

7

With respect to the Board of Stewards action involving Garrison, Plaintiffs' Second Amended Complaint fails to allege a deprivation other than referencing "sanctions." Therefore, the Court is unable to determine what interests of Plaintiffs were affected by Garrison and the extent therein.

This is particularly important when it concerns a due process right. Plaintiffs' Second Amended Complaint alleges due process violations under the Constitutions of the United States and the State of Ohio.[2] Plaintiffs" Second Amended Complaint does not distinguish what constitutional due process right is affected. The Constitution protects both an individual's substantive and procedural due process rights. Substantive Due Process has been defined as, "the doctrine that governmental deprivation of life, liberty, or property are subject to limitations regardless of the adequacy of the procedures employed." *Pearson v. City of Grand Banc,* 961 F.2d 1211, 1216 (6th Cir. 1992). Furthermore, substantive due process encompasses, "the right not to be subject to arbitrary and capricious action by a state either by legislative or administrative action..." *Id* at 1217. Here, without some factual underpinning, the Court cannot determine the deprivation or the injury. Therefore, Plaintiffs' claim fails as a matter of law.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976).

---

[2] *U.S. and Ohio Constitutional claims are coextensive and are analyzed the same. Walsh v. Erie County Dept. of Job and Family Services*, 240 F.Supp.2d 731 (N.D.Ohio 2003).

The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334, citing *Morrissey v. Brewer,* 408 U.S. 471, 481, (1972). In analyzing procedural due process claims courts must consider three factors: "(1) some substantive right - life, liberty or property - must be at stake; (2) some deprivation of that substantive right must occur; and (3) the deprivation must occur without due process. If the process for the deprivation is adequate, then no due process violation has occurred." *Brickner v. Voinovich,* 977 F.2d 235, 237 (6th Cir.1992). Similar to the substantive due process analysis, Plaintiffs' failure to allege facts concerning the nature of the charges, the proceedings, the deprivation and the sanctions fails to satisfy the *Twombly/Iqbal* standard and mandates dismissal.

Even if the Court were to find the facts as alleged stated a due process claim, Plaintiffs' claims fail as a matter of law because Plaintiffs' were afforded sufficient due process. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews v. Eldridge,* 424 U.S. 319, 333, (1976) (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, (1965)). Assuming that the Board of Stewards improperly conducted the initial hearing and issued sanctions, the law is quite clear that Plaintiffs had a right to appeal the Board of Stewards' decision and that such an appeal would have stayed any sanction order. See O.R.C. § 3769.091 ("Any fine or suspension may be appealed to the commission. Such appeal shall stay the fine or suspension until further action by the commission."). As previously stated by the Court in its Order denying Plaintiffs' Motion for Preliminary Injunction, an appeal under O.R.C. § 3769.091

affords the appellant an opportunity for a full hearing before the OSRC, complete with the opportunity to call witnesses and to be represented by counsel. Should the appellant object to the finding of the OSRC, Ohio law permits an appeal to an Ohio court of common pleas and subsequently, the right to appeal to an Ohio appellate court.

In fact, under Ohio law, the Board of Stewards is not required to hold a hearing prior to imposition of sanctions. See *Wager v. Ohio State Racing Comm'n*, No. CA-2885 1992 WL 29209, *3 (Ohio App. Jan. 22, 1992); O.R.C. § 119.06. In *Barry v. Barchi,* (1979) 443 U.S. 55, the United States Supreme Court held that due process did not require a pre-deprivation hearing before suspending a horse trainers horse from racing. The Supreme Court held:

> We do not agree with Barchi's basic contention, however, that an evidentiary hearing was required prior to the effectuation of his suspension. Unquestionably, the magnitude of a trainer's interest in avoiding suspension is substantial; but the State also has an important interest in assuring the integrity of the racing carried on under its auspices. In these circumstances, it seems to us that the State is entitled to impose an interim suspension, pending a prompt judicial or administrative hearing that would definitely determine the issues.

*Id.* at 64.

Here, Ohio law requires any sanction imposed on Plaintiffs by the Board of Stewards be stayed if Plaintiff appeals. The appeal must be heard by the OSRC within thirty days of the date of the appeal. *Wagers*, at *3. Plaintiffs' due process violation claim fails because the statutory scheme provided in O.R.C. § 3769.091 provides multiple levels of review sufficient to ensure Plaintiffs an opportunity to be heard. Plaintiffs do not allege that an appeal to the OSRC would be futile, nor do they allege that the appeals permitted under the statute do not satisfy due process requirements. Therefore, Plaintiffs cannot assert a lack of due process as a matter of law.

There are a number of additional grounds for dismissing Plaintiffs' claims against Garrison. First, Defendant is entitled to immunity for any monetary damages resulting from acts in his official capacity as a Racing Steward under the Eleventh Amendment.

"The Eleventh Amendment, as interpreted by the Supreme Court, bars an action for damages in a federal court against a State, unless Congress has abrogated its sovereign immunity or the State has expressly waived it." *Lee Testing & Engineering, Inc. v. Ohio Dept. of Transp.*, 855 F.Supp.2d 722, 725 (S.D.Ohio,2012) citing *Virginia Office for Protection & Advocacy v. Stewart,* ––– U.S. ––––, 131 S.Ct. 1632, 1637–38, (2011). "The same immunity applies to an instrumentality of the state, such as a state official sued in his or her official capacity." *Lee Testing,* 855 F. Supp.2d at 725 citing *Regents of the University of California v. Doe,* 519 U.S. 425, 429 (1997); *see also Ernst v. Rising,* 427 F.3d 351, 358 (6th Cir. 2005). "Suits for money damages against state officials in their official capacity are considered to be suits against the state itself." *Lee Testing*, 855 F. Supp.2d at 725 citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Eleventh Amendment immunity bars claims brought under 42 U.S.C. § 1983 and state law. *Lee Testing*, 855 F. Supp.2d at 725-726 ("Because state officials are being sued for money damages in their official capacity, the Eleventh Amendment is squarely in play as a bar to suit in federal court, at least to the extent that Plaintiffs are bringing claims under 42 U.S.C. § 1983 (Claim Two) and state law (Claim Three)"). Furthermore, a §1983 action brought against state officials acting in their official capacities fails because such state actors are not "persons" within the meaning of 42 U.S.C. § 1983. See *Will,* 491 U.S. at 62–71. Therefore, Plaintiffs' official capacity claims against Defendant for monetary damages are barred by the Eleventh Amendment.

Also, Plaintiffs' Abuse of Power Claim fails as a matter of law insofar as it states a claim under Ohio law because Ohio does not recognize such a claim. *See Peters v. Ohio Dept. of Natural Res.,* Case No. 03AP-350, 2003 WL 22480395, *4 (Ohio App. Dist 10, Nov. 4, 2003). "However, an abuse of power claim can be brought in federal court as substantive or procedural due process arguments." *Schwartz v. City of Conneaut,* Ohio, Case No.09 CV 1222, 2009 WL 4730594, 6 (N. D. Ohio, Dec. 8, 2009) *See also Myers v. Delaware County,* Case No. 2–07–cv–844, 2008 WL 4862512, * 9–10, (S. D. Ohio Nov. 7, 2008). "The Sixth Circuit has explained that 'substantive due process prohibits the government's abuse of power or its use for the purpose of oppression, and procedural due process prohibits arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards.'" *Schwartz at 6, Myers* at *4 ( *quoting Howard v. Grinage,* 82 F.3d 1343, 1350 (6th Cir.1996). "When defendants are acting under color of state law, these arguments are raised as § 1983 claims." *Schwartz,* at 6. Thus, for the same reasons Plaintiffs' due process claim fails, their abuse of power claim fails, because the two are analyzed similarly. Since Plaintiffs have not alleged sufficient facts to support their due process claims, their abuse of power claim fails as well. Furthermore, because Ohio law affords sufficient due process, Plaintiffs' abuse of power claim fails.

The Court also finds Defendant is entitled to qualified immunity on Plaintiffs' claims against Defendant in his individual capacity. Qualified immunity protects government officials and employees performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818

12

(1982); *see also Saucier v. Katz,* 533 U.S. 194, 202 (2001). When considering the defense of qualified immunity a court must determine: (1) whether the facts alleged or shown by the plaintiffs make out a violation of federal statutory or constitutional right; and (2) whether that right was "clearly established" at the time of the defendants' alleged misconduct. *Pearson v. Callahan,* 555 U.S. 223 (2009). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006). Here, Plaintiffs have failed to allege violation of a clearly established right because they have not asserted what they were charged with, the deprivation they suffered nor the sanctions imposed. Also, they have not shown a denial of a constitutional right because the process given them was sufficient under the law.

Therefore, for the foregoing reasons, the Court grants Defendant's Motion for Judgment on the Pleadings as to all claims asserted against him in Plaintiffs' Second Amended Complaint.

IT IS SO ORDERED.

                                        s/ Christopher A. Boyko
                                        CHRISTOPHER A. BOYKO
                                        United States District Judge

Dated: March 26, 2015