# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **BENJAMIN MUMAW, ET AL.,** | ) | **CASE NO.1:13CV1048** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **OHIO STATE RACING COMMISSION** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO:**

This matter is before the Court on Defendants' Thistledown Racetrack L.L.C, Richard Kinsey and Joel McCullar's Motion for Judgment on the Pleadings (ECF #62).  For the following reasons, the Court grants, in part, and denies, in part, Defendants' Motion.

Plaintiffs, Benjamin Mumaw and Joshua Mumaw, are Ohio residents and members of a father/son operation that breeds and trains racehorses and Plaintiff, Eyes of a Child Stables, is a racing consortium and registered partnership in the State of Ohio.  In this action, they seek monetary damages and injunctive relief against the Commission and the other named Defendants.

The Ohio State Racing Commission is a statutorily created Ohio agency charged with the regulation, supervision and rule enforcement for Thoroughbred and Standardbred horse racing in the State of Ohio. The Commission vests its authority regarding horse racing, participants, personnel and activities involved in horse racing in a Board of Stewards.  On November 8, 2012, the Board of Stewards at Thistledown Racetrack, under the Commission's authority, withdrew Plaintiffs' horse, *Officer Moo La Moo*, from a race. Plaintiffs' horse was withdrawn following

Defendant Deborah Jones's communication alleging that Plaintiffs had a horse at Sugar Creek Livestock Auction, which is known to occasionally sell horses to slaughterhouses.  The Board of Stewards also suspended Plaintiffs' track privileges for the balance of 2012 and, after a later hearing, permanently barred them from entry.

Although selling and purchasing horses at auction for the purpose of slaughter violates no state or federal laws, the Thistledown Boarding Agreement prohibits parties from transporting race horses for slaughter or at an auction house that sells horses for slaughter.  Plaintiff Joshua Mumaw was the recorded owner of the former race horse, *High Success*, when it was sold at Sugar Creek Livestock Auction.   Plaintiffs claim, however, that the horse had been given to "a woman," and deny any part in or knowledge of the horse being at auction.

Plaintiffs' Second Amended Complaint alleges Thistledown impermissibly prevented them from racing horses that were already entered in races and ejected and excluded Plaintiffs from Thistledown Racetrack without cause or inquiry.  Plaintiffs allege these actions by Thistledown deprived Plaintiffs of their occupation and ability to make a living and essentially bars Plaintiffs from participating in Thoroughbred Racing.

Plaintiffs further allege Thistledown defamed Plaintiffs and cast them in a false light by claiming Plaintiffs engaged in selling a horse to a slaughterhouse when Plaintiffs had not.

Plaintiffs Second Amended Complaint alleges "Richard Kinsey and Joel McCullar are members of and comprise the Board of Stewards I, along with Defendant Gore, and are hired, supervised and assigned to Thistledown Racetrack by Thistledown Racetrack and licensed, approved and jointly supervised by the Ohio State Racing Commission and who have absolute authority over all racing, persons and other matters on the premises of a permit holder;" (SAC at ¶ 21).  Because

they were acting under color of state law, Plaintiffs contend Kinsey and McCullar violated Plaintiffs'
United States and Ohio Constitutional due process rights in both their official and individual
capacities by scratching Plaintiffs' horse from a race without a pre-deprivation hearing or adequate
post-deprivation due process.

Plaintiffs' Second Amended Complaint further alleges Thistledown breached its Stall
Agreement with Plaintiffs when it suspended Plaintiffs' track privileges without cause.  Also,
Plaintiffs' allege Thistledown, acting in concert with Kinsey and McCullar, deprived Plaintiffs of
their due process rights by scratching Plaintiffs' horse from racing without cause and preventing
Plaintiffs from racing horses at Thistledown in the future.  Plaintiffs further allege Thistledown
tortiously interfered with Plaintiffs' future economic opportunities when it suspended and expelled
Plaintiffs' from Thistledown.

Plaintiffs seek Declaratory Relief asking the Court to find paragraph 7 of the Thistledown
Stall Agreement, prohibiting Thistledown boarders from transporting horses to slaughterhouses, as
unenforceable as against public policy.

## LAW AND ANALYSIS

After the pleadings are closed but within such time as not to delay the trial, any party
may move for judgment on the pleadings.  Fed. R. C.iv. P. 12(c).  In this jurisdiction, "[t]he
standard of review for a judgment on the pleadings is the same as that for a motion to dismiss
under Federal Rule of Civil Procedure 12(b)(6) . . . . We 'construe the complaint in the light
most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and
determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims
that would entitle relief.'" *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383,
389 (6th Cir. 2007) (citations omitted).  The Court's decision "rests primarily upon the

3

allegations of the complaint"; however, "'exhibits attached to the complaint[] also may be taken into account.'" *Barany-Snyder v Weiner,* 539 F.3d 327, 332 (6th Cir. 2008) (citation omitted) (brackets in the original).  Lastly, a Rule 12(c) motion "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law."  *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991).

## Due Process Violations Under the United States and Ohio Constitutions

According to Defendants, Plaintiffs' due process claims, found in Counts II, III, VI and VIII, and brought under 42 U.S.C. § 1983, all arise out of the scratching of Plaintiffs' horse, *Officer Moo La Moo* from a race at Thistledown.   However, according to Defendants, these claims fail as a matter of law because Plaintiffs' fail to allege the deprivation of a life,  liberty or property interest protected by the Due Process Clause of the Fourteenth Amendment.  "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights,* 437 F.3d 527, 533 (6th Cir.2006).  Plaintiffs allege due process violations under the United States and Ohio Constitutions.  The Constitution protects both an individual's substantive and procedural due process rights.  Substantive Due Process has been defined as, "the doctrine that governmental deprivation of life, liberty, or property are subject to limitations regardless of the adequacy of the procedures employed."  *Pearson v. City of Grand Banc,* 961 F.2d 1211, 1216 (6th Cir. 1992).  Furthermore, substantive due process encompasses, "the right not to be subject to arbitrary and capricious action by a state either by legislative or administrative action..." *Id* at 1217.

4

"Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). The fundamental requirement of due process is an opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. at 333. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334, citing *Morrissey v. Brewer,* 408 U.S. 471, 481, (1972. In analyzing procedural due process claims courts must consider three factors: "(1)some substantive right - life, liberty or property - must be at stake; (2) some deprivation of that substantive right must occur; and (3) the deprivation must occur without due process. If the process for the deprivation is adequate, then no due process violation has occurred." *Brickner v. Voinovich,* 977 F.2d 235, 237 (6th Cir.1992).

Plaintiffs do not distinguish whether their due process claims involve deprivation of their substantive or procedural due process rights. Defendants characterize them as procedural due process claims and Plaintiffs do not challenge Defendants' assertion. Regardless, both claims must first establish the deprivation of a life, liberty or property interest.

The Court begins by analyzing what deprivation of a constitutional right is alleged in Plaintiffs' Second Amended Complaint as it impacts both Plaintiffs' Due Process and Abuse of Power claims.[1] According to Plaintiffs' Second Amended Complaint,

---

[1]    In its Opinion and Order of Garrison's Motion for Judgment on the Pleadings the Court held an Abuse of Power claim under federal law is analyzed similarly to a Due Process violation claim. "Plaintiffs' Abuse of Power Claim fails as a matter of law insofar as it states a claim under Ohio law because Ohio does not recognize such a claim. *See Peters v. Ohio Dept. of Natural Res.,* Case No. 03AP-350, 2003 WL 22480395, *4 (Ohio App. Dist 10, Nov. 4, 2003). 'However, an abuse of power claim can be brought in federal court as substantive or procedural due

5

21. Richard Kinsey and Joel McCullar are members of and comprise the Board of Stewards I, along with Defendant Gore, and are hired, supervised and assigned to Thistledown Racetrack by Thistledown Racetrack and licensed, approved and jointly supervised by the Ohio State Racing Commission and who have absolute authority over all racing, persons and other matters on the premises of a permit holder;

22. Thistledown Racetrack, LLC. is a Thoroughbred Horse Racing Facility located in North Randall, Ohio and a subsidiary of Caesars Entertainment Corporation, a Delaware corporate entity which owns and operates multiple resort, entertainment, gaming and horse racing properties throughout several countries under a variety of names;

63. The Board of Stewards collectively and each in their individual capacities and under color of law did scratch the horse known as *Officer Moo La Moo* from Thistledown Race 7 on the 9th day of November, 2012 based solely upon the phone call of an animal rights advocate who has no authority and holds no position with either the Ohio State Racing Commission or Thistledown Racetrack;

64. The Board of Stewards collectively and each in their individual capacities and under color of law did scratch the horse known as *Officer Moo La Moo* from Thistledown Race 7 on the 8th day of November, 2012 without cause and knowing that Plaintiffs were not in violation of any law of the State of Ohio or rule or regulation of the Ohio State Racing Commission;

65. The Board of Stewards collectively and each of them individually and under color of law deprived Plaintiffs of property and liberty rights and knowingly took adverse actions against innocent licensees for the primary purpose of placating an unrelated third party without first providing a pre-deprivation hearing or providing a post-deprivation hearing; or any due process whatsoever in violation of the Fourth and Fourteenth Amendment to the U.S. Constitution and Article I, Sections 1 and 14 of the Ohio Constitution;

***93. Once a horse is properly entered in a particular race, property rights attach evoking the due process requirements of the Fourth and Fourteenth Amendments to the U.S. Constitution and Article 1, Sections 1 & 14 of the Ohio***

---

process arguments.'" *Garrison Opinion and Order pgs. 11-12 citing Schwartz v. City of Conneaut,* Ohio, Case No.09 CV 1222, 2009 WL 4730594, 6 (N. D. Ohio, Dec. 8, 2009) *See also Myers v. Delaware County,* Case No. 2–07–cv–844, 2008 WL 4862512, * 9–10, (S. D. Ohio Nov. 7, 2008).

___**Constitution**___ (emphasis added).

Thus, it is clear that the Second Amended Complaint alleges a property interest in racing at Thistledown.  Plaintiffs argue the action involves a property interest because they are licensed by the State of Ohio to engage in Thoroughbred Racing yet, were deprived of the right to race by the Board of Stewards and Thistleedown.  "Whether a person has a "property" interest is traditionally a question of state law."  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 - 856 (6th Cir. 2012); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 430 (1982) ("The hallmark of property ... is an individual entitlement grounded in state law.").  However, "[a]lthough the underlying substantive interest is created by an independent source such as state law, *federal constitutional law* determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 757 (2005). "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." *Med Corp., Inc. v. City of Lima,* 296 F.3d 404, 409 (6th Cir.2002).

The Court finds Plaintiffs' Second Amended Complaint fails to allege a deprivation of a property right or liberty right in horse racing at a particular track in a particular race.   While Plaintiffs generally allege a property and liberty interest deprivation, at paragraph 93 of their Second Amended Complaint, Plaintiffs allege, " Once a horse is properly entered into a particular race, property rights attach evoking the due process requirements of the Fourth and Fourteenth Amendments to the U.S. Constitution and Art. I, Sections 1 and 14 of the Ohio Constitution." Plaintiffs expressly allege a property interest attaches when a horse is entered in a race.  Plaintiffs do not allege a particular liberty interest, rather, they merely allege a protected

7

liberty interest without describing the interest.

Thus, Plaintiffs argue the property interest is the right not to have a horse scratched from a race, once its been entered, without due process. The Court finds several problems with this naked assertion. First, while United States Supreme Court recognizes property interests in licenses, (see *Barry v. Barchi*, (1979) 443 U.S. 55), Plaintiffs' license is not at issue. Plaintiffs do not allege that the Board of Stewards and/or Thistledown have revoked, suspended or otherwise challenged Plaintiffs' license to race horses in the State of Ohio. In fact, during the course of this litigation the Ohio State Racing Commission has indicated it had no intention of pursuing any action against Plaintiffs' license. Instead the Plaintiffs' allege a property interest in having a horse race in a particular race once it has been entered. The Court has been unable to ascertain any caselaw supporting Plaintiffs' position that the right to enter a race is a property right for purposes of a due process claim.

The Court is aware of one case wherein a court determined that the right to have a horse race in a race constituted a protected liberty interest. In *Bier v. Fleming*, 538 F.Supp. 437 (N.D. Ohio 1981), the plaintiff was a harness horse driver-trainer who was excluded from racing at the Painesville Meet, a race held at Northfield Park Racetrack, a privately owned harness race venue. Plaintiff's license was suspended and ultimately was not renewed by the Ohio State Racing Commission. Plaintiff alleged his due process rights were violated when he was prevented from racing at the Painesville Meet without a hearing. The court agreed, holding plaintiff had a liberty interest in his occupation of horse racing. The court reasoned that plaintiff had a property interest in his horse racing license because Ohio law governed the circumstances

where such a license may be revoked, denied or suspended.  The court then concluded that plaintiff had a liberty interest in his occupation as a driver to race horses in Ohio and pursue his occupation because such interest derived from his property interest in his license.  Therefore, the court concluded, plaintiff could not be deprived of pursuing his occupation absent a hearing.

The court in *Bier* relied in part on the United States Supreme Court decision in *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 572 (1972).   When defining the parameters of a liberty interest, the Supreme Court stated  "[w]hile this court has not attempted to define with exactness the liberty . . . guaranteed (by the Fourteenth Amendment), the term has received much consideration and some of the included things have been definitely stated.  Without doubt, it denotes not merely  freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men."  Quoting *Meyer v. Nebraska,* 262 U.S. 390, 399, (1923).  Thus, in finding a liberty interest in racing, the court in *Bier*, determined that because the denial affected Bier's ability to engage in his occupation, it affected a liberty interest as defined by the Supreme Court in *Roth*.  The Sixth Circuit has held that there also exists a property interest in the continuing operation of a business.  See *Women's Medical Professional Corp. V. Baird,* 438 F.3d 595 (6th Cir. 2006).

The *Bier* decision was appealed to the Sixth Circuit, which overruled the decision on the grounds that Plaintiff could not show state action.  The Court declined to consider whether the

district court's conclusion that Bier had a liberty interest in racing at a particular race was correct. Therefore, the Court has no binding precedent upon which to apply to the facts of this case.

This case presents a number of facts distinguishing it from *Bier* that, in the Court's opinion, militate against finding a protected liberty or property interest.   First, while Bier's license was revoked, depriving him of the ability to engage in his profession, Plaintiffs in this case have not suffered such a deprivation.  Plaintiffs' Second Amended Complaint alleges that Defendants' are "depriving Plaintiffs of their occupation and ability to make a living and essentially barring Plaintiffs' participation in the Thoroughbred Racing Industry."  (SAC at 5).  However, this is stated in a conclusory fashion with no factual allegation explaining how the scratching of Plaintiffs' horse in one race or the barring of Plaintiffs' race privileges at one track in the State of Ohio essentially bars them from Thoroughbred Racing.  In fact, in his affidavit filed in support of his Motion for Preliminary Injunction, Plaintiff Ben Mumaw attested that after the Thistledown suspension he raced horses in Pennsylvania and was afraid that other Ohio racetracks may ban him.  (Mumaw aff. ECF 2-8).  Therefore, Plaintiffs' allegations that they cannot effectively pursue their chosen profession is belied by their own previously filed affidavit attesting that they were, in fact, able to continue racing horses.

Also, conclusory allegations without sufficient factual underpinning cannot maintain a cause of action.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S. Ct. 1955 [(2007)], the pleading standard Rule

10

8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation.  *Id.* at 555... A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."  *Id.* at 557.   According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)).  That is, "*Iqbal* interpreted *Twombly* to require more concrete allegations only in those instances in which the complaint, on its face, does not otherwise set forth a plausible claim for relief." *Weisbarth*, 499 F.3d at 542.  A complaint should be dismissed when it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The Court holds that such an allegation without sufficient factual pleading fails to support their claim that Plaintiffs' are unable to engage in their occupation; especially when such a representation is belied by their earlier representations.

Furthermore, the Court finds no liberty or property interest in this matter because the actions taken by Thistledown and the Board of Stewards were a sanction arising, not from an Ohio statute, rule or regulation, but was instead, an alleged violation of the Stall Agreement. According to Plaintiffs' Second Amended Complaint, they were scratched from the race and barred from further racing at Thistledown due to the alleged sale of High Success at an auction for the purposes of slaughter.   Plaintiffs' Stall Agreement, which Plaintiffs' allege is a contract, contains the following language:

11

Any Trainer of Owner stabling a horse at Thistledown who directly or indirectly is part of the transport of a horse from Thistledown to a slaughterhouse or an auction house who sells horses for slaughter will be prohibited from having any stalls at Thistledown.

On page two of the Stall Application it reads:

If any Applicant or any employee, representative or agent of Applicant violates the terms an conditions set forth above, THISTLEDOWN reserves the right, in its sole discretion and without prior notice to exercise any of all of the following: ...Refuse any entry or revoke the acceptance of any entry of any horse by Applicant in any race during the current race meet:.. Revoke Applicant's privileges regarding Thistledown...

Plaintiffs' Second Amended Complaint not only alleges this Agreement was entered into by the parties but further seeks to enforce it in its Breach of Contract claim.  Because Plaintiffs' suspension did not arise from a state statute, regulation or rule but instead arose from a contracted for agreement to stable horses, no protected interest was implicated.

This conclusion is further supported by the Sixth Circuit's determination that no protected property interest is implicated where the state actor's actions were based on discretionary authority.   "If an official has unconstrained discretion to deny the benefit, a prospective recipient of that benefit can establish no more than a "unilateral expectation" to it. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.  *Med Corp., Inc. v. City of Lima,* 296 F.3d 404, 409 -410 (C.A.6 (Ohio),2002.  Assuming for the purposes of this Opinion only that Thistledown and its Board of Stewards actions were state actions, the Stall Agreement gives Thistledown sole discretion to prohibit Plaintiffs' race privileges for alleged violation of the Agreement.  By agreeing to these terms, Plaintiffs acknowledged Defendants' discretionary authority to scratch their horse and exclude them from Thistledown for violations of the Stall Agreement.  With such

12

discretionary authority, Plaintiffs expectation was a unilateral expectation under applicable law and does not support the finding of a protected property or liberty interest.

Therefore, the Court finds Defendants are entitled to judgment as a matter of law on Plaintiffs' due process claims because Plaintiffs cannot assert a protected property or liberty interest.

Defendants move the Court to dismiss Plaintiffs' due process claims insofar as they assert due process violations for injury to their reputation and contract rights.  In *Ferencz v. Hairston* 119 F.3d 1244, 1249 (6th Cir. 1997) the Sixth Circuit, quoting the United States Supreme Court in *Wisconsin v. Constantineau,* 400 U.S. 433 (1971), reads "the Supreme Court stated that '[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.'" *Id.* at 437, 91 S.Ct. at 510.  Furthermore, the right to contract is a property right under Ohio law. *Mertik v. Blalock,* 983 F.2d 1353, 1360 (6th Cir.1993) (citing *Joseph Bros. v. Brown,* 65 Ohio App.2d 43, 415 N.E.2d 987, 990 (1979)); as are the interests created by contract. *Joseph Bros.*, 415 N.E.2d at 990.

While these are viable bases for due process violation claims, Plaintiffs' Second Amended Complaint alleges no such constitutional claims.  Nowhere in their Second Amended Complaint, either in the facts or individual claims, do the Plaintiffs assert §1983 due process claims brought under a contract or for defamation.  While the Second Amended Complaint alleges Breach of Contract, Defamation and False Light claims against these Defendants, these claims are brought solely as state law claims.  Nowhere in the claims themselves do Plaintiffs

13

assert that the breach of contract or defamation deprived them of a constitutionally protected interest nor do they allege that the breach or defamation violated a constitutional right. Plaintiffs' Second Amended Complaint plainly alleges the due process violations are brought for deprivation of property rights in entering a horse for a race and denying Plaintiffs the right to race at Thistledown.  This is further bolstered by Plaintiffs' representation in its Opposition brief that " Again the *Barchi* Court makes clear that a licensee has a property interest in that license (internal citation omitted).  Paragraph 65 of Plaintiffs' Complaint clearly provides that this property interest and the deprivation thereof form the basis for their Constitutional claims." (Opposition brief pg. 8).  There is no allegation anywhere in the Complaint alleging due process violations arising from a contract or defamation.  Plaintiffs' acknowledge that their Defamation, and False Light claims are brought solely under state law.  (Opposition brief at pg. 15.

Therefore, the Court dismisses Plaintiffs' due process claims under the United States and Ohio Constitutions at Counts II, III, VI and VIII of Plaintiffs' Second Amended Complaint.[2]

**Breach of Contract**

Defendants move to dismiss Plaintiffs' Breach of Contract claim because they contend Plaintiffs' Second Amended Complaint only alleges denial of stall space which is at

---

[2]     U.S. and Ohio Constitutional claims are coextensive and are analyzed the same. *Walsh v. Erie County Dept. of Job and Family Services*, 240 F.Supp.2d 731 (N.D.Ohio 2003).

14

Thistledown's sole discretion.  Nothing in the Second Amended Complaint alleges Defendants breached a promise to Plaintiffs.

The Court holds that Plaintiffs have alleged the existence of a contract - i.e., the Stall Agreement.  Plaintiffs have alleged they were scratched from a race and denied privileges to Thistledown for breaching a condition of the agreement - i.e., not to transport a horse from Thistledown to a slaughterhouse or auction that sells horses for slaughter.  Plaintiffs are not alleging denial of stall space.  Plaintiffs contend that Thistledown sanctioned Plaintiffs pursuant to the Stall Agreement because they violated the Stall Agreement when they transported a horse to an auction that sells horses to slaughter.  This, according to Plaintiffs, is not true.  Plaintiffs allege that they suffered injury in having their horse scratched from a race and having their racing privileges due to Defendants' imposition of a contractual penalty for such a violation as described in the Stall Agreement.  The parties agree selling a horse to slaughter does not violate Ohio or federal law.  Plaintiffs aver the sanctions were imposed strictly for their alleged breach of the Stall Agreement.  Plaintiffs aver they did not breach the agreement and Thistledown, in violation of the terms of the agreement, imposed sanctions.   Therefore, the Court finds Plaintiffs' have asserted sufficient facts stating a plausible claim for breach of contract and denies Defendants' Motion on Plaintiffs' Breach of Contract claim.

**Tortious Interference with Future Economic Opportunities**

Plaintiffs' Second Amended Complaint alleges Defendants' excluding Plaintiffs' from Thistledown "tortuously (sic) interfered with Plaintiffs' abilities to conduct business and economically benefit from the conduct of their business."  (SAC at 119).  "Under Ohio law,

15

interference with business relationships or contracts generally occurs when a person, without privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another or not to perform a contract with another." *Edwards v. Woodforest Nat. Bank, No.* 1:11Cv2205, 2012 WL 1906309, 4 (N. D.Ohio, May 24, 2012) citing *Wauseon Plaza Ltd. Psp. v. Wauseon Hardware Co.,* 156 Ohio App.3d 575, 588, (2004); *A & B—Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council,* 73 Ohio St.3d 1, 14,(1995).  "The elements of a cause of action for interference with a prospective business opportunity under Ohio law are: (1) the existence or the prospect of a business relationship; (2) that defendant knew of the plaintiff's prospective relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4) the interference was without justification; and (5) the interference caused the plaintiff to suffer damages." *Edwards, at *4.* See also *Chrvala v. Borden, Inc.,* 14 F.Supp.2d 1013, 1023 (S.D.Ohio 1998); *Dish Network, LLC v. Fun Dish, Inc.,* No. 1:08 CV 1340, 2010 WL 5230860, at *5 (N.D.Ohio Dec.16, 2010).

Defendants move to dismiss the claim because Plaintiffs' Second Amended Complaint fails to allege any prospective business relationship with a third party that was affected by Thistledown's excluding Plaintiffs from its premises.

Plaintiffs' contend the business relationship affected is Plaintiffs' relationship with Defendants.  However, as Defendants point out under Ohio law "a person cannot tortiously interfere with his own business relationship."  *Dolan v. Glouster,* 173 Ohio App.3d 617, 630-631 (Ohio App. 4 Dist.,2007).  Therefore, in the absence of some allegation or argument that

16

Plaintiffs' business relationship with a third party was interfered with, Plaintiffs' tortious interference claim fails as a matter of law.

**Defamation and False Light**

Plaintiffs' Second Amended Complaint alleges Thistledown defamed Plaintiffs by terminating Plaintiffs' track privileges.  In doing so, Plaintiffs contend Thistledown advertised to all the world that Plaintiffs engaged in improper or unlawful conduct in attempting to sell a horse to slaughter.  According to Plaintiffs, this representation was false and Thistledown took no steps to investigate the matter before disclosing it to others.

To assert a claim of defamation there must be: 1)  a false statement of fact; 2) the false statement was defamatory; 3) the false defamatory statement was published by defendants; 4) the publication was the proximate cause of the injury to the plaintiff; and 5) the defendants acted with the requisite degree of fault. *Voyticky v. Village of Timberlake,* Ohio 412 F.3d 669, 678 (6th Cir. 2005) citing *Celebrezze v. Dayton Newspapers, Inc.,* 41 Ohio App.3d 343(1988).

To assert a claim for false light,  "[i]n Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Welling v. Weinfeld,* 113 Ohio St.3d 464, 473 (Ohio,2007).

Both these state law causes of action require knowledge or reckless disregard for the

17

falsity of the statements made and publication to third parties.  Plaintiffs' Second Amended Complaint alleges the same facts in support of both Plaintiffs' Defamation and False Light claims.  Plaintiffs allege Defendants suspended Plaintiffs for the alleged transport of a horse to slaughter.  By suspending Plaintiffs, Defendants "advertized (sic) to all the world that Plaintiffs engaged in improper or unlawful activity by selling or attempting to sell a horse for slaughter and human consumption."  (SAC at 139 & 151).

Defendants move for judgment on these claims, contending that Plaintiffs' fail to allege facts plausibly supporting these claims.  In particular, Defendants argue Plaintiffs have failed to allege a false statement made by Defendants, rather, the Complaint only alleges that Defendants relied on the false statements of Deborah Jones.  Reliance on another's false statements is not defamation according to Defendants.  Furthermore, Defendants contend Plaintiffs fail to allege publication of false statements to third parties.  Simply alleging that Defendants suspended Plaintiffs is insufficient to support defamation of false light claims.

Plaintiffs respond that the Second Amended Complaint sufficiently alleges Defamation and False Light claims.  Not only did Plaintiffs expressly allege Thistledown advertised to the whole world but further alleged "Thistledown company officials conveyed to others that Plaintiffs had consigned or were directly responsible for the consignment of the horse known as *High Success* to a public auction for the purpose of slaughter and human consumption thereby defaming Plaintiffs" (SAC at 143 & 155).  Therefore, Plaintiffs contend, their Second Amended Complaint plausibly alleges facts supporting claims for Defamation and False Light.

Although sparse, the Court finds sufficient facts have been pled to survive Defendants'

18

Motion.  First, Plaintiffs have alleged that Thistledown conveyed false information.  This identifies the corporation as the defamer.  Second, Plaintiffs identify the allegedly false information conveyed - i.e., that Plaintiffs consigned or were directly responsible for consigning a horse to slaughter.  Plaintiffs expressly state this was false.  Lastly, Plaintiffs allege the publication of this information advertised to all the world that Plaintiffs engaged in conduct damaging to Plaintiffs reputation.  Ordinarily this may not be enough to show publication but in this context wherein Plaintiffs allege it was disclosed in the context of announcing Plaintiffs' suspension, discovery will be able to determine whether such information was transmitted to the general public or some third parties.  Therefore, the Court denies Defendants' Motion for Judgment on the Pleadings on Plaintiffs' Defamation and False Light claims.

**Declaratory Relief on Section 7 of the Stall Agreement**

Defendants move to dismiss Count X of Plaintiffs' Second Amended Complaint which seeks a declaration from the Court that the Stall Agreement's requirement that trainers not transport horses to a slaughterhouse nor to an auction that sells horses to slaughter, is unenforceable as against public policy.  Plaintiffs waive the claim in their Brief in Opposition at page 19 and the Court grants Defendants' Motion and dismisses the claim.

Therefore, for the foregoing reasons, the Court grants Defendants' Motion, in part, and dismisses Plaintiffs' Due Process claims found at Counts II, III, VI and VIII.  The Court further dismisses Plaintiffs' Tortious Interference claim at Count IX and Plaintiffs' claim for Declaratory Relief found at Count X.  The Court denies, in part, Defendants' Motion for Judgment on the Pleadings regarding Plaintiffs' state law claim for Breach of Contract at Count

VII, Plaintiffs' Defamation claim at Count XI and Plaintiffs' False Light claim at Count XII.

IT IS SO ORDERED.

s/ Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge

Dated:  March 31, 2015

20