**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| **BENJAMIN MUMAW, ET AL.,** | ) | **CASE NO.1:13CV1048** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **THISTLEDOWN RACETRACK LLC,** | ) | **OPINION AND ORDER** |
| **ET AL.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant Deborah Jones' Motion to Dismiss for

Lack of Personal Jurisdiction and Motion to Dismiss Counts XIII, XIV and XV of Plaintiffs'

Second Amended Complaint.  (ECF # 73).  For the following reasons, the Court grants, in

part and denies, in part, Defendant's Motion.

Plaintiffs' Second Amended Complaint alleges the following facts.  Benjamin and

Joshua Mumaw are a father and son thoroughbred horse training operation.  The father,

Benjamin, has been training race horses since 1974 and is a partner in Plaintiff Eyes of a

Child Stables.  His son, Joshua, has been training horses since 2009.  Joshua owned a

thoroughbred horse named High Success which he and Benjamin trained.  The horse was

stabled and raced at Thistledown Racetrack.  In the fall of 2012, a veterinary exam revealed High Success had a leg injury that prevented it from racing.  The Mumaws gave High Success to a woman seeking a riding horse for her children.  A few weeks later, Plaintiffs were contacted by Defendant Deborah Jones, an animal rights activist in California, who informed them High Success was discovered at an auction and was purchased by a third party to prevent High Success's sale for slaughter.  Jones demanded money to help support High Success and reported the sale to Thistledown officials and Racing Stewards.  The Racing Stewards then scratched Mumaw horses from all races and prohibited Plaintiffs from entering other horses owned or trained by them from any further races in 2012.  Thistledown Racetrack suspended certain  track privileges of the Mumaws, including their ability to participate in any races.  These actions were based on Thistledown's Boarding Agreement, which prohibited the transportation from the Racetrack of any horse for the purpose of slaughter.

Plaintiffs' Second Amended Complaint alleges claims against Deborah Jones  for Extortion, Defamation, Libel and False Light for her actions in reporting High Success's alleged sale for slaughter to Thistledown and other parties.

**Deborah Jones' Motion**

Jones moves to dismiss the claims against her for lack of personal jurisdiction over her because she is a California resident and has no business dealings or contacts with the State of Ohio.  She further moves to dismiss Plaintiff's Extortion claim because Ohio does not recognize a civil cause of action for extortion.  Jones also asks the Court to dismiss Plaintiff's Defamation and Libel claim because they fail to assert sufficient facts making them plausible

2

under relevant United States Supreme Court precedent.  Furthermore, the only relevant statements she made were true statements made to a quasi-judicial body and were made for a proper purpose.  Lastly, she moves to dismiss Plaintiffs' False Light claim because statements made about Plaintiffs' business and professional life are not private in nature and cannot support a False Light claim.

## LAW AND ANALYSIS

When a court approaches a motion to dismiss for lack of personal jurisdiction based solely on written materials and affidavits, "the burden on the plaintiff is relatively slight, [...] and the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal [ ] [...]."  *Ampco System Parking v. Imperial Parking Canada Corp.*, No. 1:11CV1172, 2012WL1066784, at *2 (N.D. Ohio Mar. 28, 2012) (quoting *Air Prods. & Controls, Inc., v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007).  The court "does not weigh the controverting assertions of the party seeking dismissal." *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998).  Plaintiff need only establish jurisdictional claims with  "reasonable particularity" and the pleadings and affidavits are construed in the light most favorable to plaintiff. *Ampco*, 2012WL1066784, at *2.  The burden is on the plaintiff, however, to establish that jurisdiction exists, and the plaintiff may not merely stand on his pleadings in the face of a properly supported motion for dismissal. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  The plaintiff must set forth specific facts showing that the court has jurisdiction. *Id.*  Therefore, dismissal is proper only if all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).  "In

3

deciding a Rule 12(b)(2) motion to dismiss, the Court is to construe the facts in the light most favorable to the non-moving party. Significantly, the Court is not to weigh any assertions of the party seeking dismissal which contradict those offered by the plaintiff." *Capitol Specialty Ins. Corp. v. Splash Dogs,* LLC 801 F.Supp.2d 657, 663 (S.D.Ohio,2011) citing *CompuServe,* 89 F.3d at 1262 ( *citing Theunissen,* 935 F.2d at 1459). "That way, a defendant cannot defeat personal jurisdiction simply by filing an affidavit that denies all jurisdictional facts." *Capitol Specialty*, 801 F.Supp.2d at 663.

**Personal Jurisdiction**

To determine whether personal jurisdiction may be exercised, this Court applies Ohio law and uses a two step analysis. *Sterling Jewelers, Inc. v. M & G Jewelers, Inc*., No. 5:14CV2030, 2015 WL 545778, at *1 (N.D. Ohio Feb. 10, 2015).  First, the Court determines whether Ohio's long arm statute confers personal jurisdiction. *Id*.  If the Court determines that the long-arm statute confers personal jurisdiction, it then determines whether exercising jurisdiction over the Defendant would deprive the Defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. *Id*.

**Ohio's Long Arm Statute**

Plaintiffs allege the Court may exercise personal jurisdiction over Jones because she transacted business in the State of Ohio and caused a tortious injury to Plaintiff.  The pertinent part of the long-arm statute provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state....;

4

(3) Causing tortious injury by an act or omission in this state;

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

R.C. § 2307.382(A).

Courts do not apply a generalized test when determining whether a defendant transacted business in Ohio pursuant to R.C. § 2307.382(A)(1), but make determinations on a case by case basis. *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 236 (1994); *see also Joffe v. Cable Tech, Inc.*, 163 Ohio App. 3d 479, 488 (2005). The Ohio Supreme Court has held that to 'transact business' is "to prosecute negotiations; to carry on business; [or] to have dealings." *Faurecia Exhaust Sys., Inc. v. Walker*, 464 F. Supp. 2d 700, 705-06 (N.D. Ohio 2006) citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75 (1990). When personal jurisdiction over an out of state defendant is based only on the long arm statute, only a cause of action arising from acts enumerated in the statute may be asserted against the defendant. R.C. § 2307.382(C).

"[A] defendant is subject to personal jurisdiction under the Ohio long-arm statute—specifically O.R.C. § 2307.382(A)(6)—where that defendant causes tortious injury in Ohio by an act committed outside of the state when he 'might reasonably have expected that some person would be injured in Ohio.'" *J4 Promotions, Inc. v. Splash Dogs*, LLC, No. 08CV977, 2009 WL 385611, 9 (N.D. Ohio, Feb. 13, 2009) *quoting Farr v. Spatial Tech., Inc.*, 152 F.R.D. 113, 116 (S.D.Ohio 1993). "Furthermore, where defamatory statements are made outside of the state with the purpose of injuring an Ohio resident and there is a reasonable expectation that injury will occur in Ohio, the requirements of O.R.C. § 2307.382(A)(6) are

5

satisfied."  *J4 Promotions, Inc.,* 2009 WL 385611, 9 citing *Farr,* 152 F.R.D. at 116.

Plaintiffs contend Jones' own affidavit supports a showing that she transacted business in Ohio.  Jones' affidavit attests "I am an advocate for and work on behalf of 501(c)(3) organizations that rescue race horses."  (Jones aff. ¶ 5).  Jones affidavit describes that on or about October 20, 2012, Jones was called by Mandae Lewis who was present at the Sugar Creek Auction in Ohio.  Lewis located several horses in a pen, which according to Jones, was typically used for slaughter horse sales.  Lewis recorded the lip tattoos used to identify horses and sent them to Jones who sent the tattoos on to a Gail Hirt at Beyond the Roses Equine Rescue and Retirement, another 501(c)(3) organization.  Together, they identified the horses including High Success.  Jones then sent emails to racetracks which Jones believed had zero tolerance policies for sending retired racehorses to slaughter.  One of these racetracks was Thistledown.  Jones then followed up the email with a phone call to Patrick Ellsworth at Thistledown to verify Thistledown had this policy and then emailed Ellsworth the names of the horses identified by lip tattoo, including High Success.  Jones then called the Mumaws that High Success was located at a slaughter pen.   (Jones affidavit ¶'s 6-11).

The Court finds Plaintiffs have satisfied their "slight" burden showing the Court has personal jurisdiction over Jones.  The evidence in this case shows issues of fact on the breadth and scope of Jones' activity directed to the State of Ohio.  However, all inferences and evidences must be construed in Plaintiffs' favor at this juncture.  Jones admits frequent communications with Ohio concerning the Mumaws activities in Ohio.  Jones admits directing phone calls and emails to Ohio businesses-i.e- racetracks- to inform them that High Success was found at an auction that includes the sale of horses to slaughter houses.  While

6

Jones' affidavit minimizes the number of phone calls to Ohio, there is evidence in the record of this case showing her involvement was substantially more than her affidavit reflects.  In the affidavits of Richard Kinsey, Racing Steward of Thistledown Racetrack, Kinsey attests that Jones called him several times.  (Kinsey affidavit at ¶ 3).  Kinsey further attests Jones' "called me to report that Ben and Josh Mumaw (the "Mumaws"), two individuals who have stabled and entered horses in races at Thistledown, had taken a horse to the "killers" at Sugercreek Livestock Auction in Sugarcreek, Ohio ("Sugar Creek").  Ms Jones reported that this horse was scheduled to be sold for slaughter..." (*Id.*)

Rick Skinner, Vice President and General Manager of Thistledown, also attests Jones called him several times.  (Skinner affidavit at 4).  He further attests Jones "...called me to report that Ben and Josh Mumaw were involved in transporting one or more of their horses to an auction where horses are sold for slaughter..."( Id).

As a result of Jones' accusations, the Mumaws were investigated and lost their racing privileges causing them to suffer injury.  According to the Mumaws, they never transported or sold High Success for slaughter.  In fact, the Mumaws dispute they even owned High Success at the time the horse was sent to auction at Sugar Creek.  The Mumaws contend that registration does not indicate ownership.

While it is debatable whether Jones' activities satisfy Ohio's long-arm statute under a conducting business theory, the facts support a showing that Jones' caused tortious injury in Ohio.  Jones argues that her actions did not cause Plaintiffs' injuries because the Mumaw's loss of racing privileges arose from Defendant Thistledown's actions.  However, the Mumaws allege not only loss of business but also loss of reputation and standing in the horse racing

community. These facts are similar to those in *Farr* where the Court held such facts supported personal jurisdiction. "As to his defamation claim sounding in tort, for example, § 2307.382(A)(6) is met since the subject phone call was, plaintiff claims, made outside the state ( *i.e.,* in Colorado), for the purpose of injuring him, and with the reasonable expectation of causing such injury within Ohio, where the call was received." *Farr ,*152 F.R.D. at 116. Therefore, the Mumaws have satisfied Ohio's long arm statute showing tortious injury in the State of Ohio.

**Due Process**

In order for personal jurisdiction to comply with due process, Defendants must have "minimum contacts" with the forum state "so that the maintenance of the action does not offend 'traditional notions of fair play and substantial justice.'" *Citizens Bank v. Parnes*, 376 F. App'x 496, 502 (6th Cir. 2010). An out of state defendant has minimum contacts "where [its ]conduct and connection with the forum state are such that he would reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

There are two categories of personal jurisdiction: general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). In the corporate context, general jurisdiction is proper where the corporation's affiliations with the State in which suit is brought are so constant and pervasive as to render [it] essentially at home in the forum state." *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, No. 1:14 CV 329, 2014 WL 3615382, at *4 (N.D. Ohio July 18, 2014), citing *Daimler*, 134 S. Ct. at 751. Ohio law does not recognize general jurisdiction over non-resident defendants, and instead requires that the court finds

8

specific jurisdiction under Ohio's long- arm statute. *Ohio Edison Co. v. Frontier N. Inc.*, No. 5:14CV321, 2014 WL 6389564, at *4 (N.D. Ohio Nov. 14, 2014).

Specific jurisdiction exists and exposes the defendant to suit in the forum state where the defendants contacts with the forum give rise to the claim. *Daimler*, 134 S. Ct. at 754. Ohio's long-arm statute only contemplates specific jurisdiction. *Hitachi Med. Sys. Am., Inc. v. St. Louis Gynecology & Oncology, LLC*, No. 5:09-CV-2613, 2011 WL 711568, at *4 (N.D. Ohio Feb. 22, 2011).

The Sixth Circuit has articulated a three-part test for determining whether the exercise of specific personal jurisdiction comports with due process:

> First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Kerry Steel*, 106 F.3d at 150 (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

To be subject to personal jurisdiction, the defendant must "purposefully avail itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Considering the three-part test for specific jurisdiction, the Court finds it has personal jurisdiction over Jones.  First, the evidence before the Court, when construed in a light most favorable to Plaintiffs, evidences Jones directed phone calls and emails to businesses and public officials specifically in the State of Ohio knowing such actions could cause injury to

9

Plaintiffs business dealings and reputation. Plaintiffs' claims for Defamation and False Light arise directly from Plaintiffs' representations made to businesses and officials in Ohio and the consequences Plaintiffs suffered i.e.- Plaintiffs ability to conduct business specifically in the State of Ohio and loss of reputation and standing in the horse racing community- arose from Jones' statements. Therefore, the Court has personal jurisdiction over Jones.

**Motion to Dismiss Under 12(b)(6)**

In deciding a motion to dismiss under FED. R. CIV. P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in [*Bell Atlantic v.] Twombly*, 550 U.S. 544, 127 S.Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a

pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

**Extortion**

Defendant contends and Plaintiffs concede, that Ohio does not recognize a civil cause of action for extortion. See *Groves v. Groves,* No. 09AP1107, 2010 WL 3722641, 7 (Ohio App. 10 Dist., Sept 23, 2010)("no civil cause of action for extortion exists.").   Therefore, the Court grants Defendant's Motion to Dismiss Count XIII.

**Defamation**

To state a claim for defamation under Ohio law a plaintiff must show "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Harris v. Bornhorst,* 513 F.3d 503, 522 (6th Cir.2008).  Statements of opinion are not actionable under a defamation theory.  See *Scott v. News-Herald*, (1986) 25 Ohio St.3d 243, 250.  Whether allegedly defamatory statements are actionable and involve opinions as opposed to facts are questions of law for the court to decide. *Yeager v. Local Union* (1983), 6 Ohio St.3d 369, 372, *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279.

"When determining whether speech is protected opinion a court must consider the

11

totality of the circumstances.  Specifically, a court should consider: the specific language at issue, whether the statement is verifiable, the general context of the statement, and the broader context in which the statement appeared.”*Id.* at syllabus.  The Court must consider  “whether a reasonable reader would view the words used to be language that normally conveys information of a factual nature or hype or opinion; whether the language has a readily ascertainable meaning or is ambiguous.” *Id. at* 282.

Jones argues that Plaintiffs' Second Amended Complaint fails to allege specific facts sufficient to state a claim for Defamation.  According to Jones, Plaintiffs' Second Amended Complaint only makes conclusory statements that fail to meet the *Twombly/Iqbal* plausibility standard.  The Court disagrees.  Plaintiffs' Second Amended Complaint alleges the following facts supporting their claim for Defamation:

> 7. This is an action seeking damages against the Defendant Deborah Jones for engaging in a pattern of extortionary tactics and blackmail by demanding that the Plaintiffs pay monies or face a public smear campaign and the lodging of false accusations with the Ohio State Racing Commission and Thistledown Racetrack officials and the public at large designed to disrupt and destroy their careers. Defendant Jones also slandered and libeled Plaintiffs and cast a false light upon them by making various claims and accusations against Plaintiffs, all of which she knew to be false and misleading, on various online websites.

> 39. Defendant Deborah Jones contacted the Racing Stewards at Thistledown Racetrack and corporate officials of Thistledown and falsely claimed that Joshua and Benjamin Mumaw had a horse at Sugar Creek Livestock Auction named *High Success*.

> 164. When Plaintiff refused her demands, Defendant Deborah Jones called the Board of Stewards for the Ohio Racing Commission and officials of Thistledown Racetrack and claimed that Plaintiff had sold the horse *High Success* at Sugar Creek Livestock Auction for slaughter.

> 165. Defendant made calls repeatedly and incessantly with the intent to cause injury to Plaintiffs' careers and good standing in the industry.

Plaintiffs' Second Amended Complaint clearly alleges Jones' statements to racing officials and the Board of Stewards that Plaintiffs' owned a horse named High Success that they sold for slaughter were untrue and caused them injury.  These statements are not opinion statements but, as alleged, purport to be statements of fact.  Thus, they are not protected speech and the allegations as set forth in the Second Amended Complaint sufficiently state a claim for Defamation.  They were also published as defined by Ohio law when Jones' made these statements to third party officials and business representatives.  "Publication of defamatory matter is its communication intentionally or by a negligent act to one other than the person defamed."  *Hecht v. Levin* 66 Ohio St.3d 458, 460 (Ohio,1993) and Plaintiffs' Second Amended Complaint alleges they suffered harm to their business and reputations.  Thus, the allegations support a defamation claim.

Furthermore, Plaintiffs' are not required to show that the statements are false in response to a Motion to Dismiss, only that the allegations are supported by facts sufficient to render the claims plausible.   Plaintiffs have  met their burden.

Jones also contends her statements are privileged statements made relative to a quasi-judicial proceeding.  "A statement made in a judicial proceeding enjoys an absolute privilege against a defamation action as long as the allegedly defamatory statement is reasonably related to the proceeding in which it appears." *Id.*   However, Jones cannot demonstrate how the statements made to race track owners and state officials related to any judicial proceeding when it was her statements that prompted an investigation.  No proceedings had been initiated until after Jones made her allegedly defamatory statements to Ohio racing officials and track owners.   Nor were they made to a Board or quasi-judicial body in the context of a hearing or

13

proceeding.   Jones' case authority does not support such a broad reading of privilege.

Lastly, Jones argues that her statements are entitled to a qualified privilege because they were made for a proper purpose involving a matter of public concern.  This qualified privilege was described by the Ohio Supreme Court in *Hahn v. Kotten*, 43 Ohio St.2d 237, (1975) as follows:

> A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.

Whether Jones is entitled to a qualified privilege is an issue of fact to be determined after discovery.  Here, the communication must have been made in good faith, Jones must have an interest or duty in the subject matter, the statement must be limited in scope and made on a proper occasion by a proper manner to proper parties.   Jones has not met her burden to show she is entitled to the privilege.  She contends she had a proper purpose in reporting violation of Thistledown's boarding agreement however, Jones is not a party to the contract between the Mumaws and Thistledown, nor has she shown good faith as the Mumaw's have alleged she did it to extort monies from them.  She has not alleged a public interest to be upheld.   Therefore, she has failed to show she is entitled to the privilege.  However, this does not foreclose Jones from asserting the privilege after discovery has been conducted.

Therefore, the Court finds Jones' is not entitled to dismissal of Plaintiffs' defamation claim.

14

**False Light**

Jones contends Plaintiffs' False Light claim fails because such a claim requires publication of information that is private, not public.  Here, Jones argues her statements concerned Plaintiffs' business practices not private matters, and as such are not actionable under a false light theory.  To assert a claim for False Light,  "[i]n Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed."  *Welling v. Weinfeld,* 113 Ohio St.3d 464, 473 (Ohio,2007).  "In order to succeed on this claim, the statement made by the defendant must be untrue."  *Roth v. Sloan,* No.08Cv 1656, 2011 WL 1627932, 7(N.D.Ohio, April 29, 2011) *Nicolazzo v. Yoingco,* 149 Ohio Misc.2d 44, 898 N.E.2d 94, 102 (Ohio Misc.2007) (citing *Welling,* 866 N.E.2d at 1057). "Since this claim is similar to defamation, a plaintiff may pursue both claims in the alternative; however, a plaintiff may not recover under both claims for a single statement." *Roth, at* 7  citing *Welling*, 866 N.E.2d at 1058.

The cases cited by Jones, imposing a showing of disclosure of a plaintiff's private life, all predate Ohio's recognition of a tort claim for False Light.  The Court has found no such restriction in post-*Weiling* decisions.  See *Murray v Huffingtonpost.com, Inc.,* 21 F.Supp.3d 879 (S.D.Ohio, 2014).  Instead, courts have held "critical inquiry is the nature of the statement; a plaintiff's privacy is not invaded when "unimportant" false statements are made. It is only when there is such a "major misrepresentation" of the plaintiffs' character, history,

15

activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in such position."  *Mangelluzzi v. Morley*, --- N.E.3d ----, 2015 WL 4660073 *9 (Ohio App. 8  Dist.,2015) quoting *Restatement of the Law, 2d, Torts,* Section 652E.

  The Mumaws' claims are similar to those in *Mangelluzzi* that the Ohio court found supported a False Light claim.  "Allegations of the Morleys knowingly making false statements to various organizations, agencies, and other members of the public, including at Gates Mills city council meetings, such as the Mangelluzzis "damaging the environment by cutting down trees and polluting streams," support the Mangelluzzis' claim for false light." *Mangelluzzi* at 9.

  Because a False Light claim is not limited to false statements made about a persons private life and because there are issues of fact whether her statements were false and a jury could find these statements highly offensive to a reasonable person, Plaintiffs have stated a claim with sufficient facts to support a plausible claim for False Light.

  Therefore, for the foregoing reasons, the Court grants Jones' Motion, in part and dismisses Plaintiffs' Extortion claim.  The Court denies Jones' Motion to Dismiss for Lack of

Personal Jurisdiction and further denies her Motion to Dismiss Plaintiff' Defamation and

False Light claims.

      IT IS SO ORDERED.


                                   s/ Christopher A. Boyko
                                   CHRISTOPHER A. BOYKO
                                   United States District Judge

Dated:  September 15, 2015